IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**MCWENDELL WILSON,**

    **Plaintiff,**

**vs.**                                        **CASE NO. 1:03CV113-SPM/AK**

**JOHNNY SMITH, et al,,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 alleging that Defendant Johnny Smith implemented a policy at the Levy County Jail of segregating sex offenders which caused abuse and physical violence against him; that Defendants Sheffield and Seckel told other inmates what Plaintiff's charges were resulting in abuse and an assault; and Defendant Reese, who is responsible for maintaining the law library, has out dated legal material which hampered Plaintiff in representing himself in his criminal case. (Doc. 1).

Defendants have moved to dismiss for failure to exhaust administrative remedies. (Doc. 52). Because materials outside the pleadings were attached to the

motion for consideration, it was converted to a motion for summary judgment and Plaintiff was advised of his obligations in responding to it. (Doc. 53). Plaintiff has not responded to the motion.

**I.    Standard of Review**

On a motion for summary judgment Defendant has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If he does so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting*

**No. 1:03cv113-spm/ak**

Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**II.     Defendants Rule 56(e) evidence**

    a)     Affidavit of Mike Sheffield

Defendant Sheffield attests that he is a Lieutenant with the Levy County Sheriff's Department and primarily responsible for the daily operations of the Levy County Jail. (Doc. 52, Exhibit 1).  Defendant Sheffield was personally familiar with Plaintiff and reviewed his file in conjunction with this lawsuit.  The jail had a policy of segregating sex offenders at night when the staff was low to protect them and others.  During the day these inmates were not separated and participated in all activities with the general population.  There is a grievance procedure at the jail which requires that the inmate first seek an informal, verbal resolution to the problem; then a written grievance should be filed; and then an appeal to the jail administrator.  There is also a separate grievance procedure for classification issues which requires that an inmate appeal a classification decision in writing within seven days and appeal to the jail administrator.  Defendant Sheffield reviewed Plaintiff's file and found 13 written grievances, none of which were appealed to the jail administrator.

**No. 1:03cv113-spm/ak**

  b)  <u>General Orders</u>

Defendants have provided the jail's written policy regarding classification and grievances. The policy is as stated by Defendant Sheffield in his affidavit. (<u>See</u> above).

  c)  <u>Grievances filed by Plaintiff</u>

<u>June 22, 2003</u>: "Mam or sir why am I housed by my old sex charge and segregated in Pod #1 doarm #121 with all sex offenders. The hole jail now know I'm a sex offender."
<u>Response</u>: "You are here for failing to register as a sex offender along with your other charges, therefore you are classified as a sex offender."

<u>June 22, 2003</u>: "Mr. Shatfiled why am I being kept in Pod # Doarm #121. The inmates call it the baby raper's cell. I also have been called baby raper and moore."
<u>Response</u>: "Mr. Wilson Inmates are housed according to their classification."

<u>June 22, 2003</u>: "Mr. Johnson why have I been segregated and put with all sex offenders in Pod #1 Doarm #121. Due to the segregation all inmate now know I have a sex charge and are calling me baby raper, and moore. Why would you segregate me knowing this would happen I'm now marked for real."
<u>Response</u>: "You have been housed in an area do to your charges or past charges."

<u>June 22, 2003</u>: "As I now relize Mr. Smith I have been segregated into a pod were all inmates have sex charges. I this now hole jail incarcerated and staff know I have a sex charge. Why was I segregated."
<u>Response</u>: "Inmates must be housed according to their classification."

<u>June 27, 2003</u>: "I went out to wreck because Nurse Mathis asked me to officer days and Officer Cook were on when Inmate Ronald Marr went up to Root and Odien started saying I Have a problem with all of you and your type there said he would beat every one of us up. He was refren to sex offenders. Then he pushed Mr. Root then officer came broke it up. This man threatened all sex offenders. P.S. I don't even know him. Why does he know I'm sex offender?"
<u>Response</u>: "This situation will be dealt with."

**No. 1:03cv113-spm/ak**

June 27, 2003: "Mr. Smith how does Inmates in Levy County Jail know I'm a sex offender. Inmate Marr called me baby raper and said he would stab up all my kind on wreckreation yard on 6-27-03. This is very depprising to me! How does these inmate here in jail know I'm a sex offender?
Response: "They probably know because you are housed in the sex offender dorm. No inmates have access to your charges specifically."

June 27, 2003: "Sir on 6-27-03 I went out to wreckreation because Nurse Mathis said it would be good for my medical conation. So I did and Inmate Marr pointed at me called me a baby raper and siad he would beat me and all my kind and stab us up. Sir thie deprreased me greatly! He also soved Inmate Root and chest. How does he know I'm a sex offender.
Response: "Mr. Wilson, You have wrote at least 5 request/grievance reference this matter to myself/Capt. Johnson even Sheriff Smith. I do not know how he knows.

July 2, 2003: "Mr. Shatfield when did the jail start houseing sex offenders togather? And who made this policy. Ande exalty why was this policy implemented.
Response: "This information has nothing to do with your case, your court date, release date only how you are classified and this is all the information you will receive."

July 8, 2003: "Sir I had been verbely ausalted on 6-27-03 by Inmate Marr the problem as he stated was because of all in (sex offender doarm) he is no win Pot # 1 doarm #127 I thought he had been locked up?"
Response: "Mr. Wilson a incident came up on the Rec yard concerning the inmate mentioned. But your name did not come up. Why didn't you report this to the officer present?"

August 18, 2003: "Sir as you know officers and inmates know that Pod # doarm #121 is the sex offender doarm as I have been heraced by both I have no dignty left this has caused strife to my incarseration and its not healthy for me that hole jail population knew im sex offender I'm sure someone had to tell inmates doarm #121 was for sex offenders I have had a lot of nasty comments because I'm sex offender housed in doarm #121 Levy County Jail. Sir who told inmates about sex offender doarm I was told it was officers I don't know who do you?
Response: "It is not a secret that dorm 121 is the sex offender dorm."

August 18, 2003: "Sir as you know that doarm #121 is the sex offender doarm and that inmates all know this. So I get called cunt, baby raper, chester the molester, dick sucker and inmates threatin to beat me on a constant basies. What happens after one

**No. 1:03cv113-spm/ak**

starts beating on me and I half to defend myself best I can do I get charged for fight or what!"
<u>Response</u>: "If you are threaten by a inmate-you should report it to the pod officer. (This means by word or action). A fight will be investigated and a hearing held."

<u>August 15, 2003</u>: "Sir I have only been to librairy 1 time in week as I know and you know the law books are outdated. I still need theme to work on case. The sex offender doarm 121 pod #1 as its known threw out the jial is always left out when liabiary time comes I tryed to get to libairy on 8-15-03 was laufed at mky stament by officer and told no."
<u>Response</u>: "You have access to the library the same as any other dorm. The books are as up dated as soon as we can."

<u>August 22, 2003</u>: "Mr. Resse I asked on 8-22-03 first I asked Officer days then Officer Watson to got to libairy and Officer Smith as well when I asked Pod officer William he said no we were not going to the libiary. I went 1 time got law book now I need a difrent law book as I stated to other officers. I been 1 time to libairy in a work week. I also enjoy a Louis Lamour book but the law books are important to me as I noticed thier the same law book's jail had in 1993 and thier been hardly any added to theme I'm sorry you told me you would get some so as you can I hope the next 10 years is better. Ince'd acsess to library and I'm always told no! Please do something."
<u>Response</u>: "You should have the same opportunity to go to the library as anyone else. We are working on the law books."

### III. Analysis

Since passage of the PLRA, 42 U.S.C. § 1997e(a) now provides: "*No action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added.) The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or <u>Bivens</u>. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998). There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.

**No. 1:03cv113-spm/ak**

Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Higginbottom v. Carter, 223 F.3d 1259, 1260-61 (11th Cir. 2000) (holding that an excessive force claim is subject to the exhaustion requirement); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons). Furthermore, this Court may not consider the adequacy or futility of administrative remedies, but only the availability of such.  Higginbottom, 223 F.3d at 1261, *citing* Alexander, 159 F.3d at 1323.  Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively. Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).

The proof provided by the Defendants and uncontroverted by the Plaintiff is that although he filed numerous grievances, he did not appeal any of them to the jail administrator as provided in the jail's policies.  Further, most of Plaintiff's grievances concern his classification and how others knew of his classification, but he did not specifically grieve the decision to classify him as a sex offender, which he could have done, as set forth in the jail's policy.  Plaintiff has offered no proof that any of the Defendants told other inmates about his charges, and although he alleges that he

**No. 1:03cv113-spm/ak**

witnessed an assault by Inmate Marr upon another inmate, he has offered nothing to prove that he himself was assaulted. His grievance about an assault is vague, offers no details, and even though he was told to inform his pod officer immediately upon such an incident, there is no proof that he did anything about the alleged incident.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss for Failure to Exhaust (doc. 52) be **GRANTED,** and Plaintiff's complaint, doc. 1, be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e).

**IN CHAMBERS** at Gainesville, Florida, this **13th** Day of April, 2005.

**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:03cv113-spm/ak**